IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

FEDERAL DEPOSIT INSURANCE
CORPORATION, as receiver for
R-G PREMIER BANK OF PUERTO RICO

Plaintiff

vs                                                          CIVIL 10-1622CCC

EMERITO ESTRADA-RIVERA--ISUZU DE
PUERTO RICO, INC.; DIGNO EMERITO
ESTRADA-RIVERA, his spouse EDITH
DELIA COLON-FELICIANO and their
conjugal partnership; JOHN DOE and
JANE DOE

Defendants

## OPINION AND ORDER

### I.      INTRODUCTION

        Plaintiff, the Federal Deposit Insurance Corporation, as receiver for R-G Premier Bank

of Puerto Rico ("Plaintiff" or "FDIC-R"), brings suit against Defendants, Emérito

Estrada-Rivera/Isuzu de Puerto Rico, Inc. ("EER-Isuzu"), Digno Emérito Estrada-Rivera

("Estrada-Rivera"), his spouse, Edith Delia Colón-Feliciano ("Colón-Feliciano") and their

Conjugal Partnership, for obligational debt and collection of monies on two separate loans,

two in rem actions and a personal and joint guaranty (See docket entry 13-3).

        Presently before this Court is plaintiff's Motion for Partial Summary Judgment on the

Collections Claim (**docket entry 28**), plaintiff's Memorandum of Law in Support (docket

entry 28-1), plaintiff's Statement of Uncontested Facts (docket entry 28-2), defendants'

Opposition (docket entry 33), defendants' Opposing Statement of Material Facts (docket

entry 32) and plaintiff's Reply (docket entry 36).

### II.     FACTUAL AND PROCEDURAL BACKGROUND

        On January 23, 2009, the original plaintiff, R-G Premier Bank of Puerto Rico ("R-G" or

the "Bank") filed the complaint for collection of monies and for execution of mortgage and

CIVIL 10-1622CCC                         2

of guarantees before the Court of First Instance of the Commonwealth of Puerto Rico, San Juan Part (Civil Case No. KCD 2009-0242 (908)). On April 30, 2010, FDIC was appointed as receiver of R-G to proceed with the total liquidation of the bank.  Upon its appointment as receiver, FDIC became the owner of all assets previously owned by the R-G including its rights to the assets or obligations which are the subject of this action.  See 12 U.S.C. § 1821 (d)(2)(A). On July 7, 2010, FDIC-R removed the case to this Court and requested to be substituted as plaintiff.  The amended complaint (docket entry 13-3) includes claims for collections of monies and to execute the mortgage encumbering leasehold rights on the real properties described at paragraphs 14 and 17 of the amended complaint as well as the pledge subscribed by Emerito Estrada Rivera EER-Isuzu and the personal guarantees of Digno Emerito Estrada Rivera and Edith Delia Colon.  Plaintiff claims payment of the outstanding balance under loan No. 1600440216 as follows: principal amount of $4,741,875.72, plus interest, which as of August 17, 2011 amounted to $452,531.33, and $474,187.57 in legal costs and attorney's fees.  Plaintiff also demands outstanding balances under loan No. 1600455602 as follows:  principal amount of $145,000.00, plus interest, which as of August 17, 2011, amounted to $13,957.25, and $14,500.00 in legal costs and attorney's fees.

The following material undisputed facts have been established by FDIC-R:

**A.     With Regards to Loan No. 1600440216**

On December 12, 2006, EER-Isuzu signed a Loan Agreement ("Loan Agreement") whereby the Bank agreed to lend the principal sum of $4,970,000.00    (Loan No. 1600440216).  The Loan Agreement was amended by the "First Amendment to Loan Agreement" ("Amended Loan Agreement") of May 16, 2008.

As part of the Loan Agreement, EER-Isuzu subscribed a Pledge and Security Interest (the Pledge Agreement). Through the Pledge Agreement, EER-Isuzu delivered in pledge to the Bank a mortgage promissory note payable upon presentation and to the order of the

CIVIL 10-1622CCC                             3

Bank for the principal sum of $4,970,000.00, with interest at 12%, subscribed by
Estrada-Rivera, in his capacity as President of EER-Isuzu, before Notary Rebecca
Caquías-Mejías, affidavit number 1863, of December 12, 2006.  Said mortgage note is
guaranteed by the mortgage consigned in Deed No. 67 subscribed on that same date before
the same notary.  The mortgage deed encumbers the leasehold right on the following real
properties:

> ---RUSTIC: Parcel of land identified as Lot C, known as Lot G, located in the
> Bechara Ward of the Municipality of San Juan, with a surface area of six
> thousand seven hundred eighty point four three two two (6,780.4322) square
> meters equivalent to one point seven two five one cuerdas (1.7251 cdas) of
> land and bordering on the North, with former Matadero street; on the South
> and West, with lands of the Commonwealth of Puerto Rico and by Emérito
> Estrada-Rivera; according to measurement conducted by Surveyor Carlos
> Rodríguez, license number seven thousand one hundred ninety-three (7,193).

> ---The PROPERTY is owned by the "Commonwealth of Puerto Rico,
> Department of Transportation and Public Works" (hereinafter "Lessor"), and is
> recorded as property number fourteen thousand four hundred five (14,405) at
> page thirty-four (34) of volume four hundred seventy (470) of Monacillos,
> Registry of the Property of Puerto Rico, Third (3rd) Section of San Juan.

Further, the Amended Loan Agreement modified some of the guarantees executed
by EER-Isuzu.  The parties agreed to substitute the original mortgage note that guaranteed
the debt.  As a result, EER-Isuzu delivered in pledge to the Bank a Mortgage Note upon
presentation and to the order of the Bank for the principal sum of $4,970,000.00 with interest
at the rate of 12% per annum, dated as of May 16, 2008 and subscribed by EER-Isuzu
before Notary Rebecca Caquías-Mejías, affidavit number 2325 of May 16, 2008.  Said Note
is guaranteed by the mortgage consigned in Deed No. 34 subscribed on the same date
before the same notary.  Deed No. 34 mortgages the leasehold right on the following real
properties:

> ---(A) "URBAN: Parcel of land located in the Governor Piñero Ward of the
> jurisdiction of the capital of Puerto Rico, today Monacillos Ward of the
> Municipality of Rio Piedras, which according to measurements taken by the
> Department of Public Works turned out to have a surface area of three
> thousand thirty-seven point four four seven (3,037.447) square meters, and

CIVIL 10-1622CCC                              4

which according to its titles has three hundred thirty-seven point six two (337.62) square meters, bordering on the North, with the principal lot, today Commonwealth of Puerto Rico, on the South, with lands of Standard Fluid Gas Company of Puerto Rico, today Luis E. Dubón, on the East with lands of the Estate of Lloréns-Torres formerly, today of the Commonwealth of Puerto Rico, and on the West with Matadero Street.

---Property number three thousand six hundred fifty seven (3,657) before identified as property number fourteen thousand eight hundred sixty two (14,862), registered at page one hundred eighty five (185) of volume one hundred one (101) of Monacillos, Registry of the Property of Puerto Rico, Third Section of San Juan.

---(B) "URBAN: Parcel of land located in the Monacillos Ward of Rio Piedras with a surface area of two thousand three hundred ninety-seven point one nine two three (2,397.1923) square meters, bordering on the North, with lands of Fernando Franqui, on the South, with the Margarita Creek, on the East with the Commonwealth of Puerto Rico, and on the West, with Matadero Street."

---Property number two thousand two hundred fifty three (2253) before identified as property number six thousand four hundred forty four (6,444), registered at page ten (10) of volume sixty three (63) of Monacillos, Registry of the Property of Puerto Rico, Third Section of San Juan.

---(C) "URBAN: Parcel of land located in the Monacillos Ward of the Municipality of Rio Piedras, with a surface area of five thousand nine hundred ninety-nine point nine six three (5,999.963) square meters, bordering on the North and West, with the Estate of Lloréns-Torres, on the South with the Margarita Creek, and on the East, with Matadero Street."

---Property number eleven thousand seven hundred sixty seven (11,767) before identified as property number twelve thousand four hundred twenty two (12,422), registered at page one hundred seventy one (171) of volume three hundred four (304) of Monacillos, Registry of the Property of Puerto Rico, Third Section of San Juan.

---The PROPERTY is owned by the "Commonwealth of Puerto Rico, Department of Transportation and Public Works" (hereinafter, "Lessor").

To guarantee the payment of the referenced loan, EER-Isuzu also subscribed a pledge agreement on security interest (the "Security Agreement Pledge"), before notary Rebecca Caquías-Mejías, under affidavit number 2330, of May 16, 2008.  Pursuant to said agreement, EER-Isuzu delivered a promissory note payable to the Bank for the principal sum of $1,050,000.00 with interest at the rate of 12% per annum, subscribed by EER-Isuzu before Notary Rebecca Caquías-Mejías, affidavit number 2326 of May 16, 2008. Said

CIVIL 10-1622CCC                                   5

mortgage note is guaranteed by the mortgage consigned in Deed No. 35, subscribed on that same date and before the same notary. The mortgage constituted in Deed No. 35 encumbers the leasehold rights on the real properties described in paragraph 10, above.

On December 12, 2006, defendants Digno Emerito Estrada-Rivera and Edith Colón-Feliciano subscribed a "Guaranty and Agreement" whereby they agreed to jointly, severally and unconditionally guarantee the due performance and prompt payment of EER-Isuzu's debts and obligations with the Bank, together with interest on such debts and obligations, as well as legal and other costs incurred by the Bank in the enforcement of the loan documents against EER-Isuzu and/or the guarantors.

On December 16, 2006, the Bank paid a "principal advance" in the amount of $4,955,675.99.  Defendants made some payments to cover interest accrued on the referenced loan. The last interest payment was received on May 30, 2008. Defendants also made some payments to reduce the loan's principal outstanding balance.  Even after applying said payments, the loan's principal outstanding balance stands at $4,741,875.42.  As of August 17, 2011, the principal outstanding balance on loan no. 1600440216 stood at $4,741,875.72, plus interest in the sum of $452,531.33 ($373,379.61 in accrued interest plus $79,151.72 in non-accrued interest), and $474,187.57 in legal costs and attorney's fees. Interest continues to accrue at the contractually agreed upon rate until payment in full.

**B.    With Regards to Loan No. 1600455602**

EER-Isuzu signed a "Commitment Letter" dated April 16, 2008, whereby the Bank agreed to grant a line of credit (the "Line of Credit") to EER-Isuzu for the sum of $145,000.00.  Per the Commitment Letter's terms, the sum owed would accrue interest at Citibank N.A. Base Rate in the city of New York, N.Y. ("Prime Rate") plus the monthly fluctuating interest.  In the event of default, interest equal to 2% over the interest in effect would apply.

CIVIL 10-1622CCC                          6

    To evidence the debt, the parties subscribed a Promissory Note in the principal sum of $145,000.00 payable in a single payment due on December 12, 2008. EER-Isuzu agreed to pay interest on the unpaid balance at the rate of interest prevailing from time to time at Citibank N.A. Base Rate, in the city of New York, N.Y. ("Prime Rate"), provided further that, in the event of default, the unpaid balance on the principal would accrue fluctuating interest at the rate of Citibank, N.A. "Prime Rate" plus an additional two percent (2%) ("Default Rate"). In the event that a lawsuit was filed for collection of the promissory note, the debtors agreed to pay all costs, expenses, and disbursements connected with such proceeding, plus attorney's fees in a sum equal to ten percent (10%) of the original principal sum.

    On April 18, 2008, the Bank paid a "principal advance" in the amount of $145,000.00. Defendants never made payments to cover interest accrued on the referenced loan nor to reduce the principal outstanding balance. As of this date, defendants owe the FDIC-R the principal amount of $145,000.00, plus interest, which, as of August 17, 2011, amounted to $13,957.25 ($11,548.64 in accrued interest plus $2,406.61 in non-accrued interest), and $14,500.00 in legal costs and attorney's fees. Interest continues to accrue at the contractually agreed upon rate until payment in full.

    Defendants' concede that debts "may be outstanding" under the loans at issue in the present case (See docket entry 32, at ¶¶13 and 18). However, they claim that the Bank breached certain agreements and obligations on a separate loan, causing their inability to repay the loans at issue in the present case.

## III.    STANDARD FOR SUMMARY JUDGMENT

    Rule 56 of the Federal Rules of Civil Procedure allows a party to move with or without supporting affidavits for summary judgment in the party's favor upon all or any part of the action. Fed. R. Civ. P. 56(a). The Court should grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

CIVIL 10-1622CCC                    7

moving party is entitled to a judgment as a matter of law." Id.  A factual dispute is "genuine" if it can be resolved in favor of either party and such a dispute is "material" if it potentially affects the outcome of the case.  Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

Although the moving party carries the burden of establishing that there is no genuine issue as to any material fact, the burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case."  See Celotex Corp. v. Catrett, 477 U.S. 317, 325, 331, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e), summary judgment exists "to pierce the boilerplate of the pleadings and assess the proof in order to determine the need for trial." Euromodas, Inc. v. Zanella, 368 F.3d 11, 17 (1st Cir. 2004) citing Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992).

Regarding a request of Motion for Summary Judgment, Rule 56(c) of the Federal Rules of Civil Procedure provides that:

> [t]he judgment sought shall be rendered forthwith if the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In order for a court to grant summary judgment, it must determine: (1) whether there are any material facts at issue in the dispute; (2) whether those issues have been adequately presented to the court so as to be considered as genuine issues, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986), and (3) whether the moving party is entitled to judgment as a matter of law.  Román Figueroa v. Torres Molina, 754 F. Supp. 239, 240-41 (D.P.R. 19).

CIVIL 10-1622CCC                              8

The standard for granting summary judgment in the First Circuit was clearly set forth in <u>Hann v. Sergeant</u>, 523 F.2d 461 (1st cir. 1975).   The criteria for granting summary judgment is two-fold:

> . . . the language of Rule 56(c) set forth a bifurcated standard which the party opposing summary judgment must meet to defeat the motion.  He must establish the existence of material fact which is both "genuine"and "material". A material issue is one which affects the outcome of the litigation.  To be considered "genuine" for Rule 56 purposes a material issue must be established by sufficient evidence supporting claimed factual dispute . . . to require a jury of judge to resolve the parties differing versions of the truth of trial.   The evidence manifesting the dispute must be "substantial", going beyond the allegations of the complaint.

<u>Id</u>. at 464 (citations omitted).    <u>See also</u> <u>U.S. v. One Parcel of Read Property</u>, 960 F.2d 200, 204 (1st Cir. 1992).

If a factual issue is not relevant to the resolution of a controlling legal issue raised by a motion for summary judgment, it is not considered material within the meaning of Rule 56(c) and summary judgment can be granted.  <u>U.S. Fire Ins. Corp. v. Productions Padosa, Inc.</u>, 835 F.2d 950, 953 (1st Cir. 1987); <u>Boston Five Cents Sav. Bank v. Dept. of Housing</u>, 758 F.2d 1, 4 (1st Cir. 1985); <u>U.S. Sumitomo Shoji New York, Inc.</u>, 814 F.2d 798, 804 (1st Cir. 1987).  If the only issue to be decided by such a motion are issues of law, judgment may be entered upon a finding that these issues, once resolved, favor claimant's position.  <u>Méndez v. Banco Popular</u>, 900 F.2d 4, 7-8 (1st Cir. 1990).

The burden of providing that there is no genuine issue of facts falls upon the moving party. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986); <u>Adikkes v. Kress & Co.</u>, 398 U.S. 144, 157 (1970).  However, the First Circuit has held that if the movant has alleged particular undisputed facts that entitle him to summary judgment as a matter of law, then the burden shifts to the opposing party to show the summary judgment is inappropriate.  <u>Jaroma v. Massey</u>, 873 F.2d 17, 20 (1st Cir. 1989); <u>Stephahischen v. Merchants Dispatch Transportation Corp.</u>, 722 F.2d 922, 928-932 (1st Cir. 1983).  When analyzing a petition for summary judgment, the court "must look at the record . . . in the light most favorable to . . .

CIVIL 10-1622CCC                          9

the party opposing the motion." Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988); Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962).  However, the opposing party cannot defeat a motion for summary judgment by relying solely on his allegations, particularly once they are contradicted by the evidence introduced by the motion.  Pérez de la Cruz v. Crowley Towing & Transportation Co., 807 F.2d 1084, 1086 (1st Cir. 1986); Santoni v. Federal Deposit Insurance Corp., 677 F.2d 174 (1st Cir. 1975).  A party opposing a motion for summary judgment must "point to specific material which, if established at trial, would entitle it to prevail on those matters."  Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir. 1985) (quoting Over the Road Drivers, Inc. v. Transport, Inc. Co., 637 F.2d 816 (1st Cir. 1980).

## IV.    DISCUSSION

        Pursuant to Article 1206 of Puerto Rico's Civil Code, 31 P.R. Laws Ann. § 3371, "[a] contract exists from the moment one or more persons consent to bind himself or themselves, with regard to another or others, to give something or to render some service." A contract is the concurrence of an offer and an acceptance. In Puerto Rico, contracting parties may make an agreement and establish the terms and conditions which they may deem advisable, provided they are not in contravention of the law, morals, or public order.  Article 1207 of Puerto Rico's Civil Code, 31 L.P.R.A. § 3372, P.R. Laws Ann. tit. 31, § 3372 (1991); Hennes v. Sun Life Assurance Co. of Canada, 291 F. Supp. 670, 673 (D.P.R. 1968).  Contracts are perfected by mere consent, and from that time they are binding, not only with regard to the fulfillment of what has been expressly stipulated, but also with regard to all the consequences which, according to their character, are in accordance with good faith, use, and law.  Article 1210 of Puerto Rico's Civil Code, 31 L.P.R.A. § 3375.

        Puerto Rico law limits the freedom to contract only in circumstances that violate the law, morals or public policy.   31 L.P.R.A. §§ 4, 3372, 3421; Grissom v. Colotti, 644 F. Supp. 903, 905 (D.P.R. 1986).  Otherwise, contracts must be fulfilled according to their stipulations pursuant to the codified doctrine of *pacta sunt servanda* (agreements must

be respected).  P.R. Civil Code, Article 1044, 31 L.P.R.A. § 2994; Casera Foods, Inc. v. E.L.A., 108 P.R. Dec. 850 (1979).  "Obligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations." Id.  Therefore, courts may not relieve a party of its obligation to do that which it agreed to by contract, but must, instead, enforce them pursuant to the law relevant and applicable.  See Sánchez v. Esso Standard Oil, 2010 WL 3809990 at *13 (D.P.R. Sept. 19, 2010); Myers v. Benus Silva, 208 F. Supp. 2d 155, 160 (D.P.R. 2002); Hennes v. Sun Life Assurance Company of Canada, 291 F. Supp. 670 (D.P.R. 1968).

Plaintiff and defendants bound themselves to the terms and conditions of the Loan Agreement of December 12, 2006, as amended on May 16, 2008, and the Commitment Letter of April 16, 2008, respectively (docket entries 28-3, 28-4 and 28-13).  The terms and conditions that govern the parties' relationship are clear and free of ambiguity, as stated in the documents previously described.  Under the Loan Agreement, as amended, plaintiff agreed to extend a term loan to EER-Isuzu in the principal amount of $4,970,000.00 (docket entry 28-3, at Sec. 2.1, page 8).  EER-Isuzu, in turn, was obligated to repay the loan within twenty four (24) months, or December 12, 2008 (the "Loan Maturity Date") (docket entry 28-3, page 5).  As of August 17, 2011, the loan's principal balance stood at $4,741,875.42 (docket entry 28-2).  Defendants have not fulfilled their obligation to repay said loan, as specified in the Loan Agreement, as amended. Defendants' contend that part of the amounts disbursed were used, without their consent, to pay off two loans belonging to a Mr. Félix Rivera.  Defendants, however, expressly admitted to having signed the Loan Agreement, dated as of December 12, 2006 and notarized before notary public Arline V. Bauzá-Figueroa, affidavit No. 21,416.   The Loan Agreement contains a clear Funding Summary which specifies the use that defendants' would give to the loan proceeds (docket entry 28-3).  The only "basis" for defendants' argument regarding the alleged discrepancy in the Loan Agreement's Funding Summary is Mr. Estrada-Rivera's Sworn Declaration

(docket entry 32-1).  No further evidence has been submitted.  Mr. Estrada-Rivera's Sworn Statement is insufficient. The record shows that defendants' placed their initials on the left margin of the Loan Agreement's Funding Summary.  They cannot go against their own actions. The Funding Summary set forth the purposes for which the loan would be used. The terms and conditions of the Loan Agreement are clear and free of ambiguity.  The defendants, as borrowers, had full knowledge of the use to be given to the funds disbursed pursuant to said Loan Agreement.

As to the Commitment Letter, the Bank agreed to extend a line of credit in the amount of $145,000.00 (docket entry 28-2).  Defendants were obligated to repay the line of credit within eight (8) months of the closing date, on or before December 12, 2008 (docket entry 28-13).  As of August 17, 2011, the line of credit's outstanding principal balance stood at $145,000.  Docket entry 28-2.  Since they have made no payments to the principal outstanding balance, the Court finds defendants in breach of the Commitment Letter's obligation to repay the funds disbursed.

The uncontested facts establish that defendants are in breach of both contracts and have not fulfilled their obligation to repay either the  loan or the line of credit. Defendants argue that the outstanding debts are subject to the defense that R-G was in breach of a separate contract related to the Empresas Cerromonte.  Defendants do not demonstrate how R-G's alleged breach of the obligations which they claim it had in relation to  the Empresas Cerromonte financial transaction, relieves them from their obligations under the two loan agreements at issue in this case. These two loan agreements have very specific terms and conditions which are in no way contingent upon the Empress Cerement transaction. Therefore, this is an irrelevant issue, unrelated to the matter before the Court and does not preclude this Court from entering summary judgment on the collections claims.   As to the monies owed on the loans/line of credit, no genuine dispute exists as to any material fact.

CIVIL 10-1622CCC                              12

    Plaintiff's Motion for Summary Judgment (**docket entry 28**) is GRANTED.  Defendants are hereby ordered to pay the principal sums of $4,741,875.72 for Loan Agreement No. 1600440216, as amended, and $145,000.00 for the credit line, plus interest, costs and attorney's fees.  Judgment to be entered in accordance herewith.

        SO ORDERED.

        At San Juan, Puerto Rico, on March 30, 2012.


                      S/CARMEN CONSUELO CEREZO
                      United States District Judge